## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **KRISTY HAGER, as Sole Beneficiary of Raymond E Hager's Will,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 20-00248-KD-B** |
| **SHIRLEY WILLIS, as a Licensed Edward Jones Stockbroker and Licensed Edward Jones Branch Manager Broker, *et al.*,** | ) ) ) ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

This action is now before the Court on the Motion to Compel Arbitration and for Stay Pending Arbitration filed by Defendants Shirley Willis, individually and as a broker, and Edward Jones and Company, L.P., (collectively Edward Jones) the Response filed by Plaintiff Kristy Hager (Ms. Hager), Edward Jones' Reply, Ms. Hager's sur-reply (doc. 43), and Edward Jones' opposition to the motion (docs. 9, 28, 33, 43, 47).[1]

I. <u>Jurisdiction</u>

Ms. Hager has pled jurisdiction on basis of diversity and federal question.[2]  Specifically, she alleges that:

> 1. This Court has original diversity jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332, as Plaintiffs and Defendants are citizens of different states and the matter in controversy exceeds the jurisdictional limits of the statute: $75,000.00, exclusive of interest and costs.

---

[1] Hager's motion to file a sur-reply is GRANTED.

[2] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

2. In addition, The Plaintiffs invokes this Court's supplemental jurisdiction under [28] U.S.C. § 1367 for the claims it makes (Damages) based upon Alabama statutory and common law, which claims arise out of the same set of operative facts.

(Doc. 10, p. 4) (*sic*) (bracketed text added).

Ms. Hager and Edward Jones do not dispute that they are citizens of different states or that the amount in controversy exceeds the jurisdictional limits. Edward Jones does not dispute Ms. Hager's allegation of federal question jurisdiction.[3]

II. Venue

Ms. Hager alleges that venue is proper in this Court pursuant to "28 U.S.C. § 1391(b) and (c), since the claims arose, and the injury and damages all occurred in this judicial district" (doc. 10, p. 4). She invokes § 1391(b)(2) which states that a "civil action may be brought in … a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated".

Review of the amended complaint (doc. 10) indicates that none of the events or omissions occurred in this district, but for Mr. Hager's communication with Edward Jones by phone, facsimile, email or mail, and that a substantial part of the property is situated in Florida. Moreover, the Defendants against whom Counts I through V[4] are alleged in the amended

---

[3] In Count IV, Ms. Hager sues Edward Jones for "Securities Fraud" (doc. 10, p. 14). In addition to allegations of negligence, misappropriation, fraud, and deceit, she alleges that "Edward Jones violated The Laws of Securities and Exchange Commissions, Rules of Law that Protect individuals from violations of Law" (doc. 10, p. 14).   However, under the well-pleaded complaint rule this allegation may not be sufficient to establish jurisdiction under 28 U.S.C. § 1331. See Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804,106 S. Ct. 3229 (1986).

[4] Ms. Hager lists JP Morgan-Chase Financial as a defendant and provides a Texas address. In the original complaint, Hager as Personal Representative of the Estate of Raymond E. Hager brought

2

complaint are residents of Florida,[5] within the meaning of 28 U.S.C. § 1391(c). Arguably, venue may be proper in Florida. However, to date, Edward Jones has not raised the defense of improper venue.[6]

III. Background[7]

Raymond E. Hager had an investment account with Edward Jones. His Financial Advisor, Joseph Timm states that Mr. Hager had been his client since early 2012 (doc. 33-2, declaration under penalty of perjury).[8]   In August 2017, Edward Jones, through Timm, communicated with Mr. Hager about his account (Id.) Edward Jones sent a Trust Company Individual Retirement Account Authorization Form and Beneficiary Designation and Traditional Individual Retirement Account Custodial Agreement (docs. 9-1, 9-2) (together, the "Agreement") to Mr. Hager.   The beneficiary designation document represents it was signed by

---

Count VII alleging "Violation of Probate Law" against JP Morgan-Chase (doc. 1).   However, she did not bring any Count against JP Morgan-Chase in her amended complaint (doc. 10).

[5]  "(c) Residency. -- For all venue purposes--(1) a natural person, including an alien lawfully admitted for permanent residence in the United States, shall be deemed to reside in the judicial district in which that person is domiciled." 28 U.S.C. § 1391(c)(1).

[6]  The other Defendants who have moved to dismiss, Allen Mahon, Dawn Sale, Denise Pramuk, Stephan Pramuk, Terri Stanford Mahon, Jordan Zoellner, and Kenneth Cox, appear to have waived improper venue because they did not timely raise it in their Rule 12 motions (docs. 34, 24, 22, 18, 14).

[7]  Only the background relevant to the motion to compel arbitration is included in this order.

[8]  "Fed. R. Civ. P. 56 requires that '[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.' 28 U.S.C. § 1746 requires that an unsworn declaration be made under penalty of perjury to have the same force and effect as a sworn affidavit." Dantzler v. Georgia Ports Auth., No. CV417-062, 2018 WL 7291377, at *4 (S.D. Ga. Nov. 29, 2018), report and recommendation adopted sub nom. Dantzler v. Georgia Port Auth., No. CV417-062, 2019 WL 157729 (S.D. Ga. Jan. 10, 2019).

Mr. Hager on August 22, 2017 and returned to Edward Jones (doc. 33-1, 33-2, 33-3, Bridget Franco, Branch Office Administrator, declaration under penalty of perjury).

The Custodial Agreement does not contain a signature line. Instead, the Account Authorization Form contains a provision whereby the Custodial Agreement is made part of the Agreement. Specifically, "By signing below, I acknowledge that: 1. I have received, read and understand the Edward Jones Trust Company Traditional Individual Retirement Account Custodial Agreement ("Custodial Agreement") and agree to its terms . . ." (doc. 9-1, p. 2). The Account Authorization Form contains a provision, in bold print, as follows: "The custodial agreement contains on page 6 in section 17, a binding arbitration provision which may be enforced by the parties. (Id.).

The beneficiaries are Angela D. Stanford and Theresa F. Mahon (doc. 9-1). The contingent beneficiaries to Stanford are Jordan Zoellner and Justin Zoellner (Id.).[9]  The Custodial Agreement also contains a provision which makes the Agreement binding on Mr. Hager's heirs and beneficiaries (doc. 9-2, ¶ 13(g)).

According to Ms. Kristy Hager, in 2017 Mr. Hager was married to Shirley Mahon Hager (doc. 28). She died in 2017.   Thereafter, according to Ms. Kristy Hager, Mr. Hager lived with the current Ms. Hager for "2 plus years" and they married May 21, 2019 (doc. 10; doc. 12, p. 13, Certificate of Marriage). On May 29, 2019, Mr. Hager executed a Will wherein Ms. Hager was named the sole beneficiary (doc.1, p. 18-22). On June 7, 2019, Mr. Hager executed a Warranty

---

[9]  Angela D. Stanford is not listed as a Defendant. Theresa F. Mahon appears to be the same person as Defendant Terri Stanford Mahon.

Deed to himself and Ms. Hager, with rights of survivorship, for real property located at 1204

Desoto Avenue and 1206 Desoto Avenue in Lehigh Acres, Florida (doc. 28, 11-13).

According to Ms. Hager, Mr. Hager "changed "his portfolio to designate her as his "wife

and beneficiary as the only person in complete control" of his Edward Jones accounts (doc. 10,

p. 6, ¶ 16). She alleges that Mr. Hager "changed his Will and furnished a copy to his sister

Denise Pramuk" and Shirley Willis, informed Willis that his sister Denise was stealing from his

accounts, and that his sister should be excluded "from all information concerning his holdings"

(doc. 10, p. 6, ¶ 18-19). According to Ms. Hager, Mr. Hager "handled business by phone with

Shirley Willis from Mobile, Alabama" (doc. 10, p. 6, ¶ 17). Willis sent funds to Mr. Hager as

requested, and made certain payments on his behalf (Id., p. 4, 6-7).

Mr. Hager died June 14, 2019 (doc. 33-7, Death Certificate). Ms. Hager alleges that after

his death, Willis refused to produce his stocks, bonds, and securities to Ms. Hager and refused to

discuss the issue (doc. 10, p. 6-7). Ms. Hager alleges that Denise Pramuk conspired with Willis

and together they stole the stocks, bonds and securities from her (doc. 10, p. 6-7, ¶ 20-21). Ms.

Hager does not dispute that during the two-year time period between August 2017, when the

Account Authorization Form was signed, and June 14, 2019, when Mr. Hager died, Mr. Hager

conducted business with Edward Jones.

Ms. Hager appears to believe that she should have been identified in Mr. Hager's Edward

Jones account in two ways; as a joint owner or person with permission to access the account

before his death and as a beneficiary after his death. Ms. Hager argues that Mr. Hager notified

Edward Jones to add her to the account, and exclude Denise Pramuk, but Edward Jones failed to

do so (Id., p. 1-2; doc. 10, p. 6). She asserts that Mr. Hager's sending a copy of his Will to

Edward Jones and notifying Edward Jones about the changes in the Will, specifically designating

5

Ms. Hager as the sole beneficiary, was sufficient to change or supersede the beneficiary designation, but the change was intentionally ignored (doc. 28, p. 1). (Mr. Hager "changed his 23-year-old will, voided all previous wills and beneficiaries and notified Edward Jones of his changes which notice was intentionally ignored because Ray's sister, Denise Pramuk, was stealing and embezzling his assets with the help and illegal co-partner and co-thief, Shirley Willis" (*sic*)); ("She [Ms. Hager] was not allowed to be put on the accounts as specified. . . . All changed with Mr. Hager's new will and testament" . . . "Changed the beneficiaries. See will attached as exhibit") (Id., p. 2) (bracketed text added).

Ms. Hager petitioned to probate the Will in Lee County, Florida where certain real and personal property allegedly owned by Mr. Hager at the time of his death was located (doc. 10). The Will was admitted to Probate on August 8, 2019 (doc. 12, p. 14). She was appointed Personal Representative of the Estate (doc. 1, p. 23, Notice of Administration, In re Estate of Raymond E. Hager, Deceased, Case No. 19-CP-001832 (Cir. Ct. Lee Co., Fla. Aug. 12, 2019)).[10]

In April 2020, Ms. Hager filed a complaint in this Court. She sued as the "Personal Representative and Sole Beneficiary of the Estate of Raymond E. Hager" (doc. 1). She amended the complaint and now sues only as "Sole Beneficiary of Raymond E. Hager's Will" (doc. 10). Ms. Hager indicates that she is no longer the Personal Representative and that the Estate is being closed (doc. 25, p. 1, 3).[11]

---

[10] Mr. Hager named Walter Sims as Executor and Jeffrey Todd Clark as alternate Executor.

[11] Ms. Hager provides the Court with a copy of her Notice of Voluntary Dismissal without Prejudice, wherein she voluntarily dismissed the Petition for Administration of the Estate on July 9, 2020 (doc. 43, p. 18).

In the amended complaint,[12] Ms. Hager brings Count I for civil theft against Shirley Willis, Edward Jones and Denise Pramuk; Count II for conversion against Shirley Willis and Denise Pramuk; Count III for Notary Fraud against Denise Pramuk "and others"; Count IV for Securities Fraud against Edward Jones, and Count V for Elderly Abuse alleging the "named Defendants above inflicted elderly abuse on Raymond E. Hager" (doc. 10).

IV. Standard of review

Edward Jones moves pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq,* to compel arbitration and for stay pending arbitration (doc. 9). "Congress enacted the FAA to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.' " Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 581 (2008) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006) (alterations in original)). In view of this policy favoring arbitration, "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Bazemore v. Jefferson Capital Sys., LLC, 827 F.3d 1325, 1329 (11th Cir. 2016).

However, this presumption in favor of arbitration "does not apply to disputes concerning whether an agreement to arbitrate has been made." Bazemore, 827 F. 3d at 1329. Thus, when the making of an agreement for arbitration is at issue, the district court applies a "summary-judgment like standard" to determine whether there is "no genuine dispute as to any material fact concerning the formation of such an agreement" and may decide "as a matter of law that [the]

---

[12] Ms. Hager's amended complaint is a disfavored shot-gun complaint where all or nearly all previous paragraphs are incorporated by reference into each count (doc. 10). This type of pleading is confusing and misleading. Therefore, to the extent possible, the Court looks not to what paragraphs are incorporated by reference, but rather to the substance of the claims set forth in each Count.

parties did or did not enter into an arbitration agreement." <u>Bazemore</u>, 827 F. 3d at 1333; <u>In re Checking Account Overdraft Litig.</u>, 754 F.3d 1290, 1294 (11th Cir. 2014) (an order compelling arbitration is "in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate'").

In that regard, the Court shall grant the motion to compel arbitration if Edward Jones shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is a "legal element of the claim under the applicable substantive law which might affect the outcome of the case." <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). A genuine dispute of material fact exists when "the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." <u>Waddell v. Valley Forge Dental Assocs., Inc.</u>, 276 F. 3d 1275, 1279 (11th Cir. 2001). The burden is with Ms. Hager to present evidence that the Agreement with Edward Jones, which contains the arbitration provision, is not valid or the arbitration provision does not apply to the dispute at issue. <u>Edward D. Jones & Co., LP v. Ventura</u>, 907 So. 2d 1035, 1040 (Ala. 2005).

V. <u>Analysis</u>

The Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*, provides in relevant part that a "written provision" in a "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, a valid contract containing a written arbitration provision is enforceable if there is a nexus to interstate commerce and the claims are covered by the arbitration clause. 9 U.S.C. § 2.

A. <u>Contract involving interstate commerce</u>

Edward Jones argues that the "fact that the lawsuit arises out of a retirement account is sufficient to satisfy the interstate commerce requirement." (doc. 9, p. 6). Ms. Hager argues that there is "[n]o proof of interstate commerce." (doc. 28, p. 4-5).

The Court finds that Edward Jones has met this element. Contracts for the management of securities and investments implicate interstate commerce. <u>See Retina Consultants P.C. Defined Benefit Pension Plan v. Benjamin</u>, No. CV 119-037, 2020 WL 1491756, at *3 (S.D. Ga. Mar. 19, 2020) ("The Supreme Court has construed this language broadly, holding that Section Two's 'involving commerce" language must be read to extend the Act's reach to the limits of Congress's Commerce Clause Power. . . .   Here, the Arbitration Agreement is within an agreement pertaining to the management of securities and investments; thus, the contract implicates interstate commerce, and the FAA governs.") (quoting <u>Allied-Bruce Terminix Cos. v. Dobson</u>, 513 U.S. 265, 268, 277 (1995) and citing <u>Belz v. Morgan Stanley Smith Barney, LLC</u>, No. 3:13-cv-636-J-34MCR, 2014 WL 897048, at *5 (M.D. Fla. Mar. 6, 2014) (citing, among others, <u>Grant v. Houser</u>, 469 Fed. Appx. 310, 313 (5th Cir. 2012) ("[The] contracts constitute interstate commerce under the FAA, because the sale of securities has a substantial effect on interstate commerce.") and <u>Rugg v. FMR Co.</u>, No. CIV.A. 09-1952, 2010 WL 3733901, at *2 (W.D. La. Sept. 20, 2010) ("Brokerage accounts involve interstate commerce, and therefore, are subject to the FAA.")).

B. <u>The existence of an agreement to arbitrate</u>

In the motion to compel arbitration, Edward Jones argues that there is a binding arbitration provision in its Agreement with the deceased Mr. Hager and that Ms. Hager as his

heir or beneficiary is bound by the Agreement (doc. 9). Edward Jones provides a copy of the Account Authorization Form which contains Mr. Hager's signature (doc. 9-1).

The threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.'" Bazemore, 827 F.3d at 1329 (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995)). The Court of Appeals for the Eleventh Circuit has held that "state law generally governs whether an enforceable contract or agreement to arbitrate exists." Id. (quoting Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1368 (11th Cir. 2005)). If there is no agreement to arbitrate, "a court cannot compel the parties to settle their dispute in an arbitral forum." Id. (internal quotation marks and citations omitted).

Thus, the Court must determine which state law applies. "Where jurisdiction is based on federal question and diversity, the choice of law rules of the state in which the action was filed provide the applicable law." United States ex rel. Duncan Pipeline, Inc. v. Walbridge Aldinger Co., 2013 WL 1338392, *10 (S.D. Ga. Mar. 29, 2013) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)); O'Neal v. Kennamer, 958 F.2d 1044, 1046 (11th Cir.1992) ("A federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits.") For choice of law, "Alabama applies the traditional doctrines of *lex loci contractus* to contract claims and *lex loci delicti* to tort claims.[13] The doctrine of *lex loci contractus* governs the validity, interpretation, and construction of the

---

[13]   As to tort claims, "Lex loci delicti has been the rule in Alabama for almost 100 years. Under this principle, an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred." Ex parte U.S. Bank Nat. Ass'n, 148 So. 3d 1060, 1069 (Ala. 2014) (quoting Fitts v. Minnesota Min. & Mfg. Co., 581 So.2d 819, 820 (Ala. 1991)).   To determine where the injury occurred, Alabama looks to the "state where the last event necessary to make an actor liable for an alleged tort takes place." Id., at 1070.

contract." Colonial Life & Acc. Ins. Co. v. Hartford Fire Ins. Co., 358 F.3d 1306, 1308 (11th Cir. 2004) (citing Cherry, Bekaert & Holland v. Brown, 582 So.2d 502, 506 (Ala.1991)).  "The doctrine states that 'a contract is governed by the laws of the state where it is made except where parties have legally contract with reference to the laws of another jurisdiction.'" Id., at 1308.[14]

The parties do not dispute that all conduct related to the Edward Jones account occurred in Florida, but for communications with Mr. Hager and receipt of funds in Alabama.[15]  However, since the parties primarily raise arguments based on Alabama law, the Court will address whether an agreement exists under Alabama law. The Court of Appeals for the Eleventh Circuit has stated that "[i]f the parties litigate the case under the assumption that a certain law applies, [the Court] will assume that that law applies." Bahamas Sales Assoc., LLC v. Byers, 701 F.3d 1335, 1342 (11th Cir. 2012); see also Cooper v. Meridian Yachts, Ltd., 575 F. 3d 1151, 1171 (11th Cir. 2009) (a choice-of-law analysis is not necessary if the parties have not asserted or shown a conflict).

Under Alabama law, the "elements of a valid contract include: ' "an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." ' " Shaffer v. Regions Fin. Corp., 29 So.3d 872, 880 (Ala. 2009) (quoting Ex parte Grant, 711

---

[14]  There is a governing law provision in the Agreement which requires application of Missouri law to contract disputes. However, the governing law provision is not applicable until there is a determination that the Agreement is a valid contract. See Bowie's Priority Care Pharmacy, L.L.C. v. CaremarkPCS, L.L.C., No. 6:18-CV-00300-LSC, 2018 WL 1964596, at *3 (N.D. Ala. Apr. 26, 2018) (finding that "Court cannot apply the choice-of-law clause until it determines that the parties have a valid contract[.]").

[15]  Edward Jones states that in August 2017 it mailed documents to Mr. Hager, but it did not state where the documents were mailed. Ms. Hager alleges in her amended complaint that she and Mr. Hager lived in Mobile, Alabama in November 2017 (doc. 10, p. 8), but the record is not clear as to whether they were living in Mobile, Alabama in August 2017.

So.2d 464, 465 (Ala.1997), quoting in turn <u>Strength v. Alabama Dep't of Fin., Div. of Risk Mgmt.</u>, 622 So.2d 1283, 1289 (Ala.1993)).[16]  "The purpose of a signature on a contract is to show mutual assent, however, the existence of a contract may also be inferred from other external objective manifestations of mutual assent." <u>Ex Parte Rush</u>, 730 So. 2d 1175, 1177-78 (Ala. 1999);[17]  <u>Walker v. Walker</u>, 144 So. 3d 359, 364 (Ala. Civ. App. 2013) ("Under Alabama law, 'whether parties have entered a contract is determined by reference to the reasonable meaning of the parties' external and objective actions'....") (citations omitted).

Except in circumstances where a signature is required by statute or the "parties agree that a contract is not binding until it is signed", neither of which are alleged in this action, a contract

---

[16] Florida law is substantially the same. To prove the existence of a contract, the party seeking to enforce the contract must prove "offer, acceptance, consideration and sufficient specification of essential terms." <u>St. Joe Corp. v. McIver</u>, 875 So. 2d 375, 381 (Fla. 2004).  "Florida applies an 'objective test' to determine whether the parties formed an enforceable contract." <u>Perez-Perez v. Vasquez</u>, 2019 WL 5291097, at *2 (S.D. Fla. June 13, 2019), report and recommendation adopted, 2019 WL 5290909 (S.D. Fla. July 12, 2019) (citation omitted). "The objective test considers whether the parties externally indicated an intent to be bound." <u>Id</u>. (citing <u>Robbie v. City of Miami</u>, 469 So.2d 1384, 1385 (Fla. 1985)); <u>See ConSeal Int'l Inc. v. Neogen Corp.</u>, 2020 WL 4736203, at *3 (S.D. Fla. Aug. 14, 2020) ("Nevertheless, '[a] contract is binding, despite the fact that one party did not sign the contract, where both parties have performed under the contract.' . . .'A contract may be binding on a party despite the absence of a party's signature. The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, for example, by the acts or conduct of the parties.'") (citations omitted); <u>Integrated Health Servs. of Green Briar, Inc. v. Lopez–Silvero</u>, 827 So. 2d 338, 339 (Fla. 3d DCA 2002) (same).

[17] In <u>Ex parte Rush</u>, homeowners sued the Defendant who contracted with them to provide a termite protection plan. Defendant sent a contract to the homeowners, they paid the fee, and then after several years discovered a termite infestation. Defendant paid for repairs under the plan. The homeowners filed suit alleging state law claims based on the infestation. Defendant moved to compel arbitration pursuant to a provision in the plan. The Alabama Supreme Court found that the homeowners' conduct indicated assent to other terms of the plan by receiving the contract, paying the fee, making claims under the plan and supervising the repairs to the home. Therefore, they were bound as well to the arbitration provision even though they did not sign the termite protection plan. <u>Id.</u>, at 1177-1178.

"need not be signed by the party against whom enforcement is sought, provided it is accepted and acted upon." Ex Parte Rush, 730 So. 2d at 1177-78; See Bowie's Priority Care Pharmacy, LLC v. Caremarkpcs, LLC, 2018 WL 1964596 (N.D. Ala. 2018) (finding that a valid contract existed and granting a motion to compel arbitration where plaintiff argued he never signed the contract on the basis that plaintiff "had shown through its conduct and past behavior to have accepted the Provider Manual's terms"); Moultry v. Tony Serra Ford, Inc., No. 2:18-CV-394-RDP, 2019 WL 2392443, at *7, n. 5 (N.D. Ala. June 6, 2019) ("However, the court briefly notes that '[t]he Federal Arbitration Act only requires that there be a written provision in a contract; it does not specify that a party's assent to the terms of the contract containing an arbitration provision can be evidenced only by that party's signature.'") (quoting Lanier Worldwide, Inc. v. Clouse, 875 So. 2d 292, 296 (Ala. 2003) and citing Caley, 428 F. at 1368-69); Mobile Attic, Inc. v. Kiddin' Around of Ala., Inc., 72 So. 3d 37, 45 (Ala. Civ. App. 2011) ("[T]he actions of the parties in reference to the contract can form the basis of mutual assent; that is, when the conduct of one party is such that the other party may reasonably draw the inference of assent to the agreement, that conduct is effective as assent.").

The statements in the declarations under penalty of perjury provided by Edward Jones, to the effect that Edward Jones sent the documents to Mr. Hager and he signed and returned the Account Authorization Form to Edward Jones, and Mr. Hager's undisputed conduct of doing business with Edward Jones for almost two years, between August 2017 and June 2019, is evidence of his assent. There is no dispute that from August 2017 until Mr. Hager's death in June

2019, Edward Jones managed the accounts, and that Willis communicated with Mr. Hager, sent

funds to him, and paid certain payments on his behalf (doc. 10).[18]

Moreover, even if Mr. Hager had not assented to the contract by his actions, Ms. Hager

cannot create a genuine issue of material fact as to the formation of an agreement with Edward

Jones with conclusory and factually unsupported allegations of forgery.[19]   In response to the

motion to compel arbitration, Ms. Hager argues that Mr. Hager did not sign the Account

Authorization Form in August 2017 (doc. 28). Instead, she states that his sister Denise Pramuk

forged the signature or had others forge his signature to assist her and Defendant Willis in their

embezzlement scheme (doc. 28, p. 3).[20]  Ms. Hager argues that because the signature is forged,

there is no Agreement and therefore, no beneficiary designation and no arbitration provision to

enforce, and Edward Jones should disburse the accounts to her as the sole beneficiary under the

Will (doc. 28). Alternatively, Ms. Hager asserts that upon pre-death receipt of a copy of the Will

and Mr. Hager's instructions to add Ms. Hager to the account, Edward Jones should have added

---

[18]  Ms. Hager alleges that Shirley Willis "handled" Raymond E. Hager's account with Edward
Jones and that "Raymond E. Hager and wife handled business by phone with Shirley Willis from
Mobile, Alabama. If Mr. Raymond E. Hager needed 25K Shirley Willis would accommodate
him." (doc. 10, p. 6). She also alleged that Willis paid the monthly payments on Raymond E.
Hager's vehicle (Id., p. 7).

[19] The Court of Appeals for the Eleventh Circuit has found that fraud in the factum may occur
when a signature has been forged, and is an issue regarding assent to a contract, which should be
addressed by the court not the arbitrator. Solymar Invd., Ltd. V. Banca Santander, S.D., 672 F.
3d 981(11th Cir. 2012); Cancanon v. Smith Barney, Harris, Upham & Co., 805 F.2d 998, 1000
(11th Cir. 1986) (if the "allegation is one of fraud in the factum ... the issue is not subject to
resolution pursuant to an arbitration clause.").

[20] Denise Pramuk is not named as a beneficiary in the Account Authorization Form.

her to the account, recognized her as the beneficiary, and distributed the funds to her after Mr. Hager died.

Ms. Hager provides a copy of a deed signed by Mr. Hager in June 2019 as evidence that the August 2017 signature is a forgery (Id., p. 11-13). Ms. Hager argues that the visible difference in the two signatures, plus the fact that the 2019 signature was notarized, is evidence that the August 2017 signature was forged. Ms. Hager also argues that because the Custodial Agreement was not separately signed, there is no evidence that it was actually sent to Mr. Hager or that he agreed to its terms, including the arbitration provision therein.

In reply, Edward Jones argues that by alleging forgery and providing a copy of a Warranty Deed signed in 2019, Ms. Hager has not provided sufficient evidence to create a genuine issue of fact as to the authenticity of the August 2017 signature (doc. 33). Edward Jones argues that evidence submitted with its reply refutes Ms. Hager's conclusory allegation that the signature was forged. Specifically, the declarations made under penalty of perjury that Financial Advisor Timm contacted Mr. Hager about his account, that Mr. Hager asked him to send the documents, that the Account Authorization Form and Custodial Agreement were mailed to Mr. Hager in August 2017 and returned signed by him, and that he never stated to Financial Advisor Timm or the Branch Office Administrator Franco that his signature had been forged (docs. 33-1, 33-2, 33-3 and 33-8). Edward Jones also provides copies of two Quit Claim Deeds signed November 15, 2017, and a Lease with Option to Purchase signed November 8, 2017, which show a substantially similar signature of "Ray Hager" to the Account Authorization Form. (docs.

33-4, 33-5, 33-6) [21]   Edward Jones argues that the 2019 Warranty Deed shows only that Mr. Hager signed his name differently in June 2019 than he did in August 2017.

Ms. Hager responds in her sur-reply that the Quit Claim Deeds are also forgeries, although notarized.[22]  To support this allegation, Ms. Hager submits entry tickets to a park in Mobile, Alabama that she alleges[23] are dated November 14 and 16, 2017, and argues that this proves Mr. Hager could not have been in Mims, Florida (9 hours away from Mobile Alabama) and signed the November 15, 2017 Quit Claim Deeds (doc. 43, pp. 38-40).[24] Ms. Hager also alleges that in April 2019, Mr. Hager told a Realtor, via email, that he owned the vacant lots at issue in the Quit Claim Deeds (doc. 43, pp. 48). This "evidence" is fraught with assumptions, i.e., where the November 15, 2017 documents were signed, that the park tickets were purchased by Mr. Hager, that Mr. Hager did not travel to Florida on November 15, 2017, that the email was written by Mr. Hager; and primarily hearsay.   The Court also highlights, that Ms. Hager has

---

[21] In the amended complaint, Ms. Hager alleges that Mr. Hager did not sign the Quit Claim Deeds or the Lease with Option to Purchase. She alleges that his sister Denise Pramuk forged his signatures and that all witnesses and the notary knew the signatures were forged (doc. 10, p. 8). The signatures on the Quit Claim Deeds were witnessed by Defendant Kenneth Cox and Denise Pramuk and notarized by Defendant Dawn Sale. The Deeds were prepared by Denise Pramuk. The Lease with Option to Purchase was purportedly signed by Mr. Hager and the lessee Jordan Zoellner. Denise Pramuk and Stephen Pramuk were witnesses and Denise Pramuk notarized the signatures (docs. 33-4, 33-5, 33-6).

[22] Ms. Hager includes the notary, Dawn Sales, as a listed defendant in her amended complaint. However, there are no claims asserted against Sales.   Ms. Hager summarily states that the notarization was "illegal".   Presumably this is based on her theory that Mr. Hager did not sign the documents.   This implies that Sales has committed a crime and violated her oath, implications that are not supported by any competent evidence.

[23] The Court notes that the dates alleged to be Nov. 14 and Nov. 16 are not legible.

[24] Ms. Hager also submits pictures that she alleges were taken by Mr. Hager in Mobile on Nov. 12 and 14, 2017.

presented evidence in response to a motion to dismiss that undercuts her unsupported allegation that the signature of Mr. Hager on the Authorization Form is a forgery.   Specifically, Ms. Hager has submitted her Certificate of Marriage to Mr. Hager which contains a signature that is visually similar to the signature on the Account Authorization Form (and the purported plagiarized Quit Claim Deeds). (See, Doc. 12, at p. 13).

Ms. Hager states that she will have a handwriting expert testify at trial (doc. 28). However, to defend this motion, and make a genuine issue of fact to resolve at trial, she must produce evidence such that a reasonable factfinder could find in her favor. In other words, Ms. Hager must produce sufficient evidence in response.   Her conclusory allegation that the Account Authorization Form is forged because she subjectively believes Denise Pramuk forged Mr. Hager's signatures on all documents in 2017 is not evidence.[25]  See Cooper v. Southern Co., 390 F.3d 695, 745 (11th Cir. 2004) (finding that summary judgment was appropriate where the plaintiff relied on conclusory assertions that were based solely on her subjective beliefs), overruled on other grounds, Ash v. Tyson Foods, Inc., 546 U.S. 454, 457–58, 126 S.Ct. 1195, 1197–98, 163 L.Ed.2d 1053 (2006). This is not the circumstance where the person whose signature is alleged to be forged is making the allegation based on their personal knowledge with regard to the signature. See Aurora Health Care, Inc. v. Ramsey, 267 So. 3d 839 (Ala. 2018); Conseco Finance Corp. of Alabama v. Slay, 839 So. 2d 617 (Ala. 2002).

Also, pointing out that Mr. Hager signed his name differently – signing "Ray Hager" in 2017 and "Raymond Eugene Hager" in 2019 – is not sufficient evidence for a reasonable factfinder to find in her favor, such that would create a genuine dispute of material fact. Thus,

---

Ms. Hager has failed to create an issue of fact as to whether the arbitration agreement was signed by Mr. Hager.

Accordingly, the Court finds that Edward Jones has met its burden to show the existence of an Agreement which contains an arbitration provision.

C. Whether the Agreement is binding on Ms. Hager as an heir or beneficiary

Ms. Hager argues that because she did not sign the Agreement with Edward Jones, she is not bound by the arbitration provision (doc. 28). Edward Jones argues that the Agreement is binding on Ms. Hager as an heir and as the alleged beneficiary of the Edward Jones accounts (doc. 9, p. 3-4, 6).

There is no dispute of fact that Ms. Hager is an heir. As to her status as beneficiary, Ms. Hager alleges that Mr. Hager changed his account to designate her as his wife and beneficiary, but Edward Jones ignored the notice (doc. 10, p. 6, Amended Complaint; doc. 28). Ms. Hager appears to argue that Mr. Hager's 2019 Last Will and Testament naming her as the sole beneficiary under the Will, when delivered to Edward Jones, was sufficient to alter, supersede or create his beneficiary designation to the Account and therefore, she is the sole beneficiary (doc. 28).[26]

The Custodial Agreement contains this provision -

---

[26] Ms. Hager responds to the six items acknowledged by Mr. Hager in the Account Authorization (doc. 28, p. 1-2). In paragraph 3, he acknowledged "I have read and reviewed the beneficiary designation above and confirm the designation is accurate and complete." (doc. 9, p. 2). Ms. Hager responds "3. Was accurate in 2017, not now. Mr. Hager lived with now Kristy Hager for 2 plus years and married her. All changed with Mr. Hager's new will and testament, . . ." (doc. 28, p. 2).   In paragraph 4, he acknowledged "As the account owner, or an authorized representative of the account owner acting on specific authority, I have the authority to designate, change or revoke the beneficiaries for this account." (doc. 9, p. 2). Ms. Hager responds "4. Did exactly that. Changed the beneficiaries. See will attached as exhibit" (*sic*) (doc. 28, p. 2).

13.(g) Binding Effect, Death, Incompetence, Disability, Succession. This Agreement supersedes any prior agreement of the parties and its terms shall be binding upon my heirs, beneficiaries, personal representatives, agents, estate, executors, successors, administrators, assigns, trustees and conservators ("Successors") as to all matters involving my account with Edward Jones, including but not limited to the terms relating to arbitration. . . .

(Doc. 9-2, p. 6).

Whether Hager is an heir or a beneficiary, she is bound to the terms of the Agreement and the arbitration provision therein. Even though Ms. Hager did not sign any agreement with Edward Jones, she seeks the benefit of the Agreement, i.e., to be the named beneficiary, or damages as the intended beneficiary. Also, her claims against Edward Jones and Willis for theft, conversion and securities fraud that allegedly occurred before and after Mr. Hager died, arise out of the manner in which the accounts were managed. See Edward D. Jones & Co., LP v. Ventura, 907 So. 2d 1035, 1042 (Ala. 2005) ("Against the brokerage defendants, Ventura asserts a breach of fiduciary duties (allegedly arising under a conservator in invitum theory), and fraudulent conduct and/or suppression. Because Ventura is a third-party beneficiary of the accounts and because his claims arise out of the manner in which the investment accounts were managed or should have been managed, he is seeking the benefits of the investment agreements entered into by Dutton [his conservator]. If a nonsignatory to a contract containing an arbitration provision has obtained or seeks to obtain the benefit of the contract, the nonsignatory may not avoid the application of the arbitration provision.") (bracketed text added); Ameriprise Financial Services, Inc. v. Jones, 195 So.3d 263, 268 (Ala. 2015) (finding that

heirs were third-party beneficiaries bound by the arbitration agreement where their claims arose out of the manner in which a beneficiary change "should have been effectuated").

    D. <u>Whether Ms. Hager's claims are within the scope of the arbitration provision</u>

    Ms. Hager argues that her claims against Edward Jones and Willis are not within the scope of the arbitration provision (doc. 28). Edward Jones argues that the scope of the arbitration provision covering "any controversy arising out of or relating to" Mr. Hager's accounts, is broad enough to encompass all of Ms. Hager's claims in this action. (doc. 9).

    The provision sets forth as follows:

> Any controversy arising out of or relating to any of my account(s) from its inception, business, transactions or relationships I have now, had in the past or may in the future have with Edward Jones, its current and/or former officers, directors, partners, agents, affiliates and/or employees, this Agreement, or to the breach thereof, or transactions or accounts maintained by me with any of Edward Jones' predecessor or successor firms by merger, acquisition or other business combinations shall be settled by arbitration in accordance with the FINRA Code of Arbitration Procedure rules then in effect.

(Doc. 9-2, ¶ 16).

    The Federal Arbitration Act creates a 'presumption of arbitrability,' and under it, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" <u>Mason v. Midland Funding LLC</u>, 815 Fed. Appx. 320, 323 (11th Cir. 2020) (quoting <u>Dasher v. RBC Bank (USA),</u> 745 F.3d 1111, 1115 (11th Cir. 2014)).[27] "To further the purpose of the

---

[27] Also, the "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also " 'gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.' " <u>Harry Schein, Inc. v. Archer & White Sales, Inc.</u>, 139 S. Ct. 524, 529 (2019) (quoting <u>Rent–A–Center, West, Inc. v. Jackson,</u> 561 U.S. 63, 68-69 (2010)). However, the arbitration provision at issue does not appear to delegate the issue of whether the provision covers a particular controversy.

Federal Arbitration Act to 'guarantee[ ] the enforcement of private contractual arrangements,' arbitration agreements must be interpreted consistent with 'the clear intent of the parties... [and] the plain language of the contract....'" <u>Robinson v. Virginia Coll., LLC</u>, 788 Fed. Appx 697, 700–01 (11th Cir. 2019) (quoting <u>*E.E.O.C. v. Waffle House, Inc.*</u>, 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (bracketed text in original).   Therefore, "the language of the contract ... defines the scope of disputes subject to arbitration." <u>Id.</u>, at 701 (quoting <u>E.E.O.C. v. Waffle House, Inc.</u>, 534 U.S. at 289, 122 S. Ct. 754.) "For a claim to 'be arbitrable ... [it must be] *either directly or indirectly related to the subject matter of the contract*." <u>Id.</u>, (quoting <u>Telecom Italia, SpA v. Wholesale Telecom Corp.</u>, 248 F.3d 1109, 1114 (11th Cir. 2001) (quoting in turn Joseph T. McLaughlin, *Arbitrability: Current Trends in the United States*, 59 Alb. L. Rev. 905, 932 (1996)) (bracketed text and italics in original). "

"Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." <u>Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.</u>, 553 F.3d 1351, 1366 (11th Cir. 2008) (citation omitted).   The arbitration provision covers "any controversy arising out of or relating to any of" Mr. Hager's accounts. The Court of Appeals for the Eleventh Circuit has found that similar language should be broadly interpreted to cover all controversies because: "Any disputes means all disputes, because 'any' means all." <u>Anders v. Hometown Mortg. Servs., Inc.</u>, 346 F. 3d 1024, 1028 (11th Cir. 2003).   Review of the factual allegations in the amended complaint shows that the claims alleged by Ms. Hager against the Edward Jones Defendants all arise out of or relate to Mr. Hager's accounts, and therefore, fall within the scope of the arbitration provision.

VI. <u>Conclusion</u>

Upon consideration of the foregoing, the Court is "satisfied that the issue involved … is referable to arbitration under" the agreement. 9 U.S.C, § 3. Accordingly, the motion to compel arbitration is GRANTED and Ms. Hager's claims against Edward Jones and Shirley Willis are referred to arbitration. This action is STAYED as to Edward Jones and Shirley Willis pending arbitration as to those claims. The parties are ORDERED to file a report as to the status of the arbitration on or before **March 1, 2021.**

DONE and ORDERED this the 14th day of October 2020.

s/ Kristi K. DuBose
KRISTI K. DuBOSE
CHIEF UNITED STATES DISTRICT JUDGE